IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**FILED**

MAY 2 9 2014

PHILIP M. FRAZIER
U.S. MAGISTRATE JUDGE
SOUTHERN DISTRICT OF ILLINOIS
BENTON, ILLINOIS

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
CELLULAR TELEPHONE NUMBER 618-
306-0598 THAT IS STORED AT PREMISES
CONTROLLED BY VERIZON WIRELESS
d/b/a CELLCO PARTNERSHIP

Case No. 14-mj-4027-PMF

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, I. A. Bratcher, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with cellular telephone number 618-306-0598 that is stored at premises owned, maintained, controlled, or operated by Verizon Wireless d/b/a Cellco Partnership, a wireless provider, headquartered in New Jersey.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Verizon Wireless d/b/a Cellco Partnership to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with cellular telephone number 618-306-0598, including the contents of communications.

2.      I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed for approximately 26 years.  My duties include investigations of violations of federal criminal statutes and collection of evidence pertaining to these investigations.  I am currently conducting an investigation involving the attempted robbery of the First National Bank in Cairo, Illinois, and numerous other offenses associated with that attempted robbery, during

which two bank employees were killed and a third was critically injured. I have reviewed this affidavit and the facts and information contained herein are true to the best of my knowledge and belief.

      3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

      4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Attempted Bank Robbery, Attempted Armed Bank Robbery, and Attempted Bank Robbery During which a Person was Killed, in violation of Title 18, United States Code, Sections 2113(a), (d) and (e) respectively; Felon in Possession of a Firearm in violation of Title 18, United States Code, Section 922 (g)(1); Possessing, Using, Carrying, and Brandishing a Firearm During and In Relation to a Crime of Violence, in violation of Title 18, United States Code, Section 924(c); Conspiracy to Commit an Offense against the United States in violation of Title 18, United States Code, Section 371, Interstate Transportation of a Stolen Vehicle in violation of Title 18, United States Code, Section 2312; Interstate Transportation of Stolen Goods in violation of Title 18, United States Code, Section 2314; and Aiding and Abetting the Commission of a Federal Criminal Offense in violation of Title 18, United States Code, Section 2, have been committed by JAMES NATHANIEL WATTS. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5.     On May 15, 2014, at approximately 5:15 p.m. an individual approached three female employees of the First National Bank in Cairo, Illinois, as they left the bank after closing. The individual was a black male and, as video surveillance showed, the individual forced the three employees back into the bank in an attempt to rob it.  Surveillance video shows that the individual was armed with a firearm.

6.     Because the bank was closed, the individual was unsuccessful in obtaining any money.  During the course of the attempted robbery, the bank employees were forced into the employee lounge where two of the employees were killed and one was critically wounded. The employees' deaths and wounds were inflicted with a knife.

7.     Surveillance video showed, and the surviving victim reported, that the individual was talking on a handheld two-way/walkie-talkie radio during the course of the bank robbery. The victim reported hearing responses on the radio from an unknown subject or subjects.

8.     Surveillance video also showed the individual taking the purses of the three employees, placing them in one of the employee's vehicles, a 2014 Buick Enclave, and leaving the bank parking lot in that employee's vehicle.

9.     At approximately 6:55 p.m., the employee's vehicle was observed by a law enforcement officer being driven by a black male. The officer had traveled across the Mississippi River into Missouri in an effort to locate the individual and/or stolen vehicle. The officer, who was heading towards Wilson City, Missouri, met the stolen vehicle in Missouri as it was traveling back towards Cairo, Illinois.  Later law enforcement agents received information from

ONSTAR confirming that the stolen vehicle had been transported into Missouri between the time of the robbery and the time the officer encountered it.

10.     As the officer turned around and began to follow the vehicle, it accelerated and a high speed pursuit followed with speeds reaching over 100 m.p.h.. The pursuit ended near the Illinois Central Railroad train trestle bridge that spans the Ohio River near Cairo.

11.     The black male exited the stolen vehicle and fled on foot to the trestle and attempted to conceal himself within the structure of the trestle. The individual was cornered by law enforcement agents in that location. At approximately 9:00 p.m., following a stand-off, the black male was taken into custody and identified as JAMES NATHANIEL WATTS. During the stand-off WATTS asked law enforcement officers, "Are they dead?" In an effort to calm him down, agents falsely told him that the employees were not dead. WATTS responded, "Yes they are. I made sure of it." Also during the stand-off, WATTS was allowed to call his mother and during that conversation told his mother, "I killed that woman."

12.     At the time of his arrest, WATTS was in possession of a Colt model MK, .380 caliber semi-automatic pistol, bearing serial number MU29470. The firearm was located in the front pocket of the hooded sweatshirt that WATTS was wearing.

13.     Within the structure of the trestle in the location where WATTS first attempted to conceal himself, law enforcement agents discovered a black Samsung cellular telephone and a large hand bag belonging to Victim 1 taken during the attempted robbery of First National Bank. Video surveillance at the bank showed Victim 1 carrying the handbag out of the bank into the parking lot prior to the individual approaching the three bank employees. The black Samsung phone was collected as evidence.

4

14.     Inside of the large handbag, items such as checkbooks and legal documents were found further confirming that the handbag belonged to Victim 1. Also located inside, among other items, were three pillow cases. The pillow cases had what appeared to be blood on them and one of the pillow cases contained additional rounds of .380 ammunition and a Smith & Wesson folding knife covered in what appears to be blood, hair, and other DNA matter.

15.     Following WATTS' arrest, the purses, bags, and other personal items of the three victim bank employees were located inside of the vehicle. Also, a Cobra brand 2-Way/Walkie-Talkie radio was located inside the stolen vehicle which is consistent with the radio depicted in the bank surveillance video.

16.     A subsequent search of the area immediately surrounding the stolen vehicle, law enforcement agents located a black baseball style hat, a $20 bill, and a Verizon Samsung "flip phone" cellular telephone. The items where located along a direct route from the stolen vehicle to the train trestle. The items appear to have been very recently abandoned in that location. That Verizon Samsung "flip phone" cellular telephone has a telephone number of 618-306-0598. Based on the location from which the phone other items were recovered I have probable cause to believe that they are associated with the attempted robbery and theft of Victim 1's vehicle. The Verizon Samsung "flip phone" cellular telephone remains in possession of the FBI.

17.     Subsequent investigation revealed that WATTS purchased, among other items, a set of Cobra 2-Way radios and a cellular telephone from Wal-Mart in Cape Girardeau on the morning of May 15th. Video surveillance from Wal-Mart shows WATTS making the purchase of these items. He was accompanied a black female (hereinafter "Subject 1).

18.     In subsequent interview, Subject 1 confirmed WATTS' purchase of, among other items, the 2-way radios and cellular telephone.

19.     During the course of Subject 1's interview, Subject 1 voluntarily provided her cellular telephone to me and provided consent for law enforcement agents to search a data contained therein.   That cellphone is further described as a white IPhone 4S with a cracked screen.   That cellular phone remains in possession of the FBI.

20.     A subsequent search of Subject 1's IPhone revealed a series of text messages just prior to the attempted robbery of First National Bank.   Those texts messages were between Subject 1's IPhone and the Verizon Samsung "flip phone" with telephone number 618-306-0598, and between Subject 1's IPhone and a black ZTE cellular telephone with telephone number 618-306-5517 (which is known to be associated with a black male subject (hereinafter Subject 2)).   In these series of text messages, WATTS, Subject 1, and Subject 2 discuss the location of a firearm and ammunition and the need for Subject 1 to bring those items to Subject 2 and WATTS.

21.     Subject 2 was subsequently interviewed at his residence.   Subject 2 gave consent for a search of his residence.   During that search, a charger for a Cobra 2-way radio set was located along with additional items consistent with those purchased by WATTS from Wal-Mart on May 15th.   A black female identified as Subject 2's girlfriend was also present.   She gave consent to search her vehicle.   Located between the seats was the black ZTE cellular telephone and battery.   The battery had been removed from the phone.   Subject 2 denied that this phone belonged to him.   The black female, however, indicated that the phone did in fact belong to Subject 2.   After the battery was placed in the phone and it was turned on, law enforcement called cellular number 618-306-5517, which was known to belong to Subject 2, and the black

ZTE cellular telephone rang. Subject 2 still denied ownership of the phone. The black ZTE cellular telephone was collected as evidence and remains in FBI possession.

22.     A subsequent search of another cell phone indicates that there were text messages between WATTS and Subject 2 planning to meet after the bank robbery as a specific location.

23.     A preservation request made under 18 U.S.C. § 2703(f) was sent to Verizon Wireless on May 16, 2014, to preserve data on cellular telephone numbers 618-306-0598 and 618-306-5517, including text messages.

24.     In my training and experience, I have learned that Verizon Wireless d/b/a Cellco Partnership is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved voicemail, text, and multimedia messages for Verizon Wireless d/b/a Cellco Partnership subscribers may be located on the computers of Verizon Wireless d/b/a Cellco Partnership.

25.     Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of Verizon Wireless d/b/a Cellco Partnership for weeks or months.

26.     Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging." Based on my knowledge and experience, I believe that

stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by Verizon Wireless d/b/a Cellco Partnership for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account. As stated above, a preservation request made under 18 U.S.C. § 2703(f) was sent to Verizon Wireless on May 16, 2014, to preserve data on cellular telephone numbers 618-306-0598 and 618-306-5517, including text messages.

27.    Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

28.    Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

29.     Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.

30.     Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

31.     In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

32.     Based on my training and 26 years of law enforcement experience, I know that those involved in criminal activity where electronic devices are involved, in addition to

communicating through text messaging; also communicate through voice calls which generate records of such calls on call logs contained on the cellular telephone, electronic mail and/or social media; will use cellular telephones to take, save, and send photos or videos relating to said criminal offenses and which show association among those involved in the criminal activity which are stored on the electronic device; will browse or search the internet for information to assist in the commission of criminal offenses which creates a record of such searches on the electronic device; and that cellular telephones can contain location and position data indicating where the phone has been located during certain activities.

33.     Cairo, Illinois, is located in Alexander County, Illinois, all of which is within the Southern District of Illinois.

34.     Since this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of this search warrant, I have set forth only the facts sufficient to serve as a foundation for the issuance of the requested search warrant. I have not listed all facts or information I or other agents have gathered, been told by informants or others, and/or personally observed.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

35.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Verizon Wireless d/b/a Cellco Partnership to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.   Upon receipt of the information described in Section I of

Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

36.    Based on the forgoing, I request that the Court issue the proposed search warrant.

37.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

38.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

39.    This is a continuing investigation which could be compromised by present disclosure of the information in this affidavit. Agents have reason to believe that other individuals may have been involved in the attempted bank robbery and remain at large. Information in this affidavit could serve to alert such individuals to the investigative techniques

being utilized. Thus, it is requested that this affidavit, the warrant and related file material be sealed until further order of the Court.

**FURTHER AFFIANT SAYETH NAUGHT.**

l.A. Bratcher, Special Agent
Federal Bureau of Investigation

State of Illinois       )
                        )       SS
County of Franklin      )

Sworn to before me and subscribed in my presence on the 29 day of May, 2014, at Benton, Illinois.

PHILIP M. FRAZIER
United States Magistrate Judge

STEPHEN R. WIGGINTON
United States Attorney

GEORGE A. NORWOOD
Assistant United States Attorney

12

## ATTACHMENT A

### Property to Be Searched

This warrant applies to all information associated with cellular telephone number 618-306-0598 that is stored at premises owned, maintained, controlled, or operated by Verizon Wireless d/b/a Cellco Partnership, a wireless provider headquartered in New Jersey.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be disclosed by Verizon Wireless d/b/a Cellco Partnership

To the extent that the information described in Attachment A is within the possession, custody, or control of Verizon Wireless d/b/a Cellco Partnership, including any messages, records, files, logs, or information that have been deleted but are still available to Verizon Wireless d/b/a Cellco Partnership, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Verizon Wireless d/b/a Cellco Partnership, is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

b.      All existing printouts from original storage of all of the text messages described above;

c.      All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from May 1, 2014, to present;

d.      All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

e.     All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

f.     Detailed billing records, showing all billable calls including outgoing digits, from May 1, 2014, to present;

g.     All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from May 1, 2014, to present;

h.     Incoming and outgoing telephone numbers, from May 1, 2014, to present;

i.     All records pertaining to communications between Verizon Wireless d/b/a Cellco Partnership, and any person regarding the account or identifier, including contacts with support services and records of actions taken.

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Attempted Bank Robbery, Attempted Armed Bank Robbery, and Attempted Bank Robbery During which a Person was Killed, in violation of Title 18, United States Code, Sections 2113(a), (d) and (e) respectively; Felon in Possession of a Firearm in violation of Title 18, United States Code, Section 922 (g)(1); Possessing, Using, Carrying, and Brandishing a Firearm During and In Relation to a Crime of Violence, in violation of Title 18,

2

United States Code, Section 924(c); Conspiracy to Commit an Offense against the United States in violation of Title 18, United States Code, Section 371, Interstate Transportation of a Stolen Vehicle in violation of Title 18, United States Code, Section 2312; Interstate Transportation of Stolen Goods in violation of Title 18, United States Code, Section 2314; and Aiding and Abetting the Commission of a Federal Criminal Offense in violation of Title 18, United States Code, Section 2 involving JAMES NATHANIEL WATTS, Subject 1, Subject 2, or any other co-conspirator.